UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------------

|  |  |  |
|---|---|---|
| R. ALEXANDER ACOSTA, | : | |
| U.S. SECRETARY OF LABOR, | : | |
| | : | CASE NO. 1:17-CV-1755 |
| Plaintiff, | : | |
| | : | |
| vs. | : | OPINION & ORDER |
| | : | [Resolving Docs. 31, 33] |
| WILMINGTON TRUST, N.A., *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

------------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this case, Plaintiff Department of Labor alleges that Defendant Wilmington Trust ("Wilmington") violated the Employee Retirement Income Security Act.[1] It argues that Wilmington unlawfully caused Defendant Graphite Sales, Inc. Employee Stock Ownership Plan to overpay for an employee stock ownership purchase of Graphite Sales, Inc.'s outstanding stock.

Defendant Wilmington now moves under Federal Rule of Evidence 702 to exclude the Plaintiff's experts reports and testimony.[2] Plaintiff likewise moves to partially exclude the Defendant expert's rebuttal report and testimony under Rules 403 and 702.[3]

For the following reasons, the Court **DENIES** Defendant's motion and **DENIES** Plaintiff's motion.

---

[1] Codified in part at 29 U.S.C. ch. 18.
[2] Doc. 33. Plaintiff opposes. Doc. 36. Defendant Wilmington Trust replies. Doc. 38.
[3] Doc. 31. Defendant Wilmington Trust opposes. Doc. 35.

## I.    Background

Graphite Sales, Inc. ("Graphite") is a graphite processing company.  In 2011 Graphite engaged Defendant Wilmington as trustee for its newly-created Employee Stock Ownership Plan (the "Plan").  On August 31, 2011, with Wilmington's approval, the Plan purchased all of Graphite's stock for $16 million.  As part of this deal, selling shareholders received stock warrants for an 18% equity stake in Graphite.  Also, two Graphite officers received stock appreciation rights for a 10% Graphite equity interest, and Huntington Capital Investment Company received rights to a 7% equity stake in the company.

This lawsuit turns on the proper valuation of Graphite.  At the time of the sale, the firm Stout, Risius and Ross ("Stout") appraised the company.  Plaintiff seeks to introduce expert reports and testimony from James A. Krillenberger criticizing Stout's appraisal.[4] Defendant Wilmington seeks to introduce a rebuttal report and testimony from their own expert Mark A. Rule.[5]

## II.    Discussion

Both parties argue that the other side's expert report should be (at least partially) excluded under Federal Rule of Evidence 702, that provides in relevant part that

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is the based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods[6]

---

[4] Doc. 31-2.
[5] Doc. 31-1.
[6] Fed. R. Evid. 702.

In conducting its Rule 702 inquiry, the Court considers whether the expert's testimony "has been tested, is the subject of peer review and publication, has a permissible error rate, follows established standards, and receives 'general acceptance' within a 'relevant scientific community.'"[7] At this gatekeeping stage, the Court focuses "on principles and methodology, not the conclusions that they generate."[8]

## A. The Court Will Not Exclude Krillenberger's Expert Reports and Testimony

Defendant Wilmington broadly contends that Krillenberger's views are untethered to accepted valuation methodology—that he is trying to pass off his individual say-so as expert testimony. Defendant seizes Krillenberger's deposition remarks that he "could not speak for the entire [valuation] industry" on particular topics[9] as evidence that his views are pure speculation.

Of course, Krillenberger's concession that other valuation experts might interpret the same facts differently does not mean that his own interpretation is made up. And upon closer scrutiny, Defendant's motion simply quarrels with Krillinberger's conclusions—how he chose between competing methodologically valid approaches and how he applied those approaches to the facts—rather than showing that those conclusions are unscientific.[10]

Defendant's objections go to weight, rather than Rule 702 admissibility.[11] Cross-examination at trial will afford Defendant ample opportunity to pick out purported

---

[7] *United States v. Mallory*, 902 F.3d 584, 592 (6th Cir. 2018) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 593-4 (1993)).
[8] *Daubert*, 509 U.S. at 594.
[9] Doc. 33-2 at 24.
[10] *See In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008) ("The task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct.").
[11] *Id.* at 530 (weaknesses in the factual bases of an expert witness's opinion go to weight rather than admissibility).

methodological errors and to present any evidence contrary to Krillenberger's admissible opinions.[12]

i)    Method Objections

Firstly, Defendant takes issue with Krillenberger's view[13] that Stout should have used multiples of revenue and EBITDA[14]—not multiples of EBIT[15] and EBITDA—to value Graphite.  Defendant argues that this contradicts a cited treatise, because the treatise says that Krillenberger's preferred approach is "applied *most frequently* to start-up companies and to service businesses"[16] and Graphite is neither.  Defendant is wrong.  The cited treatise passage explicitly contemplates that Krillenberger's approach might be used in circumstances other than start-ups and service companies.

Krillenberger also opines that Stout erred by using the "exit method" instead of the "Gordon Growth Method" under the Discounted Cash Flow valuation method.[17] Defendant argues that Krillenberger's criticism is wrong, because several treatises permit either method.  Even if true, this argument does not go to admissibility because it simply takes issue with how Plaintiff's expert chose among accepted valuation methodologies.

Finally, Defendant argues that Krillenberger was wrong to consider stock warrants and stock appreciation rights in valuing Graphite.[18]  This was wrong, Defendant argues, because Krillenberger admitted at his deposition that the warrants could be considered part

---

[12] *Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

[13] Doc. 31-2 at 15.

[14] "Earnings before interest, tax, depreciation and amortization."

[15] "Earnings before interest and tax."

[16] Doc. 33-10 at 9 (emphasis added).

[17] Doc. 31-2 at 23.

[18] *Id.* at 28.

of the transaction's financing.[19]  However, in the same testimony Krillenberger insisted that

the "there is an additional motivation" for the warrants[20]—namely, that the warrants were

"a form of contingent consideration" and that they should have been included in the

purchase price.[21]  Defendants will have to chance to show that Krillenberger is wrong

about this at trial; here, they do not show that this view lacks sufficient facts or departs from

accepted principles and methodologies.

ii)　　Application Objections

Defendant takes issue with Krillenberger's critical assessment of Stout's revenue

projections.  It states that Krillenberger gave insufficient weight to the Graphite

management team's projections and ignored three pieces of evidence: a 2011 sixth-month

"Quality of Earnings" report, a 2011 due diligence call with Graphite management, and

Graphite's actual 2011 performance.[22]  Again, these purported errors would not show that

Krillenberger "made up" his own revenue projections or that his methods are not sound.

Defendants do not argue, much less demonstrate, that accepted valuation principles

compel Krillenberger to weigh the evidence differently or take this evidence into account.

Defendant further argues that Krillenberger was wrong to criticize Stout's selection

of guideline companies and Stout's use of the twenty-day average stock price for purposes

of the Guideline Company Method valuation method.  Wilmington says that these

criticisms are contradicted by Krillenberger's own analysis on other topics, and that there is

no reason to use his preferred method.  However, these purported selection errors do not

---

[19] Doc. 33-2 at 61.
[20] *Id.*
[21] Doc. 31-2 at 28.
[22] Although it does not matter here, the Court notes that Graphite's actual 2011 performance is irrelevant.
Krillenberger's report criticizes Stout's valuation on the facts known *at the time of valuation*.

even remotely suggest that Krillenberger's opinion lacks a firm methodological basis. Defendant simply quibbles with how he applied his methods to the facts at hand, a complaint that goes to weight.

Finally, Defendant argues that Krillenberger erroneously criticized Stout's application of a 10% control premium to the guideline companies' stock prices. Krillenberger supposedly erred because he "only focus[ed] on one of the ten" control factors identified in valuation literature.[23]  Again, this application error would not show that Krillenberger's views are inadmissible.

### B. The Court Will Not Exclude Rule's Expert Report and Testimony

Plaintiff moves under Rules 403 and 702 to exclude Wilmington expert Mark Rule's rebuttal report and testimony, to the extent that they relate to damages methodology. Plaintiff argues that Rule's proposed "but-for" damages methodology is inadmissible because it usurps the Court's role in determining the correct legal standard for damages.[24]

Plaintiff's argument fails.  Rule's report assesses potential damages by comparing what the Plan paid for Graphite stock with the fair market value of the stock on the date of the transaction.[25]  This is the same methodology used by Plaintiff's expert Krillenberger,[26] and the same methodology endorsed by the Sixth Circuit in *Chao v. Hall Holding Co.*[27]

---

[23] Doc. 34 at 13.

[24] *See CMI-Trading, Inc. v. Quantum Air, Inc.*, 98 F.3d 887, 890 (6th Cir. 1996) (holding that the Court, and not an expert, has sole responsibility regarding legal issues), *abrogation recognized on other grounds by Morales v. Am. Honda Motor Co., Inc.*, 151 F.3d 500 (6th Cir. 1998).

[25] *See* Doc. 31-1 at 8.

[26] *See* Doc. 31-2 at 4 (comparing the fair market value of Graphite common stock to the purchase price).

[27] 285 F.3d 415, 423 (6th Cir. 2002) (calculating damages by taking "the difference between the amount paid by the [employee stock plan] and the fair market value of the stock as determined by the district court").

Plaintiff takes issue with Rule's conclusion that the Krillenberger report failed to correctly apply this accepted methodology to the facts at hand. This argument goes to weight, not admissibility, and Plaintiff can explore it further at trial.

## III.    Conclusion

For the foregoing reasons, the Court **DENIES** Defendant's motion to exclude the Krillenberger reports and testimony and **DENIES** Plaintiff's motion to exclude the Rule report and testimony.


Dated: January 18, 2019                                    _s/        James S. Gwin_
                                                           JAMES S. GWIN
                                                           UNITED STATES DISTRICT JUDGE


.